McHan vs. Stansell.

---

T. M. McHan, plaintiff in error, vs. W. H. Stansell, defendant in error.

1. In an issue under an Act for the expulsion of intruders, if the defendant in good faith claims a legal right to the possession, he is not an intruder.
2. If the obligee in a bond for titles to land fail to pay the purchase-money according to the agreement, no demand or notice to quit is necessary to give the obligor a right of entry or action, and if he find the premises vacant and peaceably enter, he is not an intruder.

Proceeding to eject intruder. Before Judge Parrott. Whitfield Superior Court. December Term, 1868.

Stansell, on the 8th of August, 1867, made his affidavit according to law to eject McHan from certain premises in Dalton, Georgia, upon the ground that he was an intruder, that he did not in good faith claim a right to such possession, and yet would not abandon the same. McHan filed his counter-affidavit, claiming a legal right to such possession, and this issue stood for trial in the Superior Court.

The evidence for Stansell was, that he had contracted for the premises from E. R. Sassern, and paid him part of the purchase-money ; afterwards M. C. Martin became the owner of the premises, and the trade with Sassern was changed over to Martin. Martin, on the 7th of June, 185—, gave to Stansell his bonds, conditioned to make him titles to the two parcels of land upon his paying two promissory notes given for the balance of what he had agreed to pay Sasseen, and upon his making to Martin a deed to another lot. Under this original contract and under these bonds Stansell occupied the premises from early in 1857 till about the 20th of December, 1863. When he refugeed from Dalton to Middle Georgia, he made arrangements for a tenant to occupy the premises, but this failing, he left them vacant, intending to return when he could. He never was in Dalton afterwards till in April, 1869, he went there to attend Court, and then found McHan in possession. Stansell had no title to said lands except as stated.

For the defendant it was shown that Martin had traded off said notes and endorsed them. He and Stansell was sued thereon, and judgment was entered against Stansell as maker, and Martin as endorser, in November, 1860 ; and no part of this judgment has ever been paid. Martin died and Sibey Martin became his administratrix. She, as such adminstratrix, employed an attorney to get possession of the premises. He found certain persons in possession, notified them that he would sue them and they moved off, setting up no claim to the premises. He then put a person in possession as tenant of Mrs. Martin, administratrix, and when he went out, to-wit : in November 1866, McHan went in as her tenant. There being no controversy about the facts, the Court instructed the jury that Stansell was entitled to recover the possession of the premises, and they found accordingly. This instruction is assigned as error.

McCUTCHEN & SHUMATE, D. A. WALKER, for plaintiff in error, cited Irwin's Code, section 4000. They said Stansell could not dispute Martin's title : Adams on Eject.

McHan *vs.* Stansell.

275 ; not having paid the purchase-money, he could have been ejected, if in possession, without notice : Adams on Eject 121, 122 ; Jackson vs. Moncrief, 5 Mendell 26 ; Jackson vs. Muller, 9 Cow. R., 747. McHan had the right to possession : Poulain vs. Sellers, 20 Geo. R., 228, 232. One having the right of entry, may take peaceable possession and keep the possession : 1 Chit. Gen. Pr., 647 ; Crabb on real property : Section 247 ; Taylor vs. Colt, 3 T. R., 295 ; Taunton vs. Costar, 7 T. R., 431 ; Turner vs. Maymoot, 1 Bing., 158 ; T. R., 207 ; Stamper vs. Griffin, 20 Geo. R., 313 ; the Court should have left the question of *bona fides* to the jury.

W. K. MOORE, for defendant.

McCAY. J.

1. Very clearly, McHan, (Mrs. Martin's tenant,) is not an intruder. He stands in her shoes, and she *does, bona fide,* claim the right to the possession of the premises in dispute. Under the Code, section 4000, 4003, this is a sufficient reply to the plaintiff's affidavit ; it is a denial of its terms, and if it is true, it defeats the proceeding. This is a summary proceeding, and can only be made when the person in possession does not, in good faith, claim the right to be there. The question is not, does he have a right, but does he in good faith claim it. The remedy is a very harsh one. It contemplates that the sheriff, without judge or jury, shall dispossess the person in possession and put the plaintiff in his place, and by its very terms, it is only directed against persons who do not, in good faith, claim a right to the possession and yet refuse to abandon the premises, and if he in good faith claims a right to be there, *this* proceeding does not lie. It is a question of *bona fides* on the part of the claimant, and the issue is not the rightfulness of his claim, or its sufficiency, but its honesty. As a matter of course, the claim must not be a mere sham, it must have some reasonable foundation ; yet if it have this and be made in good faith, the claimant is not an intruder. This Court, 21 Ga. R., 368,

has settled this as the proper construction of the Intruders' Act, and we think rightly.

2. Under the facts of this case, however, we are of opinion that Mrs. Martin had a right to the possession. She had the legal title, and by the well-settled rules of the common law, the legal title must prevail.

At law, the right of Stansell would not be noticed. It is true, so long as the purchase-money was not yet due, equity would enjoin the vendor from enforcing his legal right against the vendee; and under our law he might set up this equitable right, by way of defence at law. But, if the vendee failed to pay the purchase-money, equity would refuse to interfere with the assertion of his legal rights by the vendor. The vendee, if he seeks equity must do equity. He could not ask the intervention of this Court, so long as he was himself at fault. So soon as the purchase-money is due, and remains unpaid, the vendee is at fault, and equity would only interfere in his offer them to pay. The vendee has no better right under our law than he had in equity, and as equity would not interfere with the vendor's assertion of his legal rights, so long as the vendee was in fault, neither can he, under our law set it up as a defence to the vendor's action to recover the premises. In truth, this right to recover the premises is just what the parties contend for. The vendor retains the title—why? Simply as a security for the purchase-money. What is a security worth that the owner cannot use?

It is argued, however, that the vendee has a right to notice to quit. In this case there was nobody in possession, and therefore nobody to give notice to. The vendor found the premises vacant, and having the right to the possession, he did, without resort to any legal proceeding, what the law would have done for him, had there been any body in possession to hinder him in the enjoyment of his own. But, notice to quit would not have been required even to sustain a suit in ejectment. Notice to quit, only is necessary in such cases, as by implication of law; there is a contract that the tenant may remain until notified to quit. A tenant for a

McHan *vs.* Stansell.

fixed period, say for a year, if he holds over without any dissent by his landlord so long, as fairly to raise an implied contract, that it is a mutual understanding that the tenancy is to continue, becomes a tenant from year to year, and is entitled to a notice to quit; and so, too, is a tenant at will.

It will be found, I think, in all the cases requiring a notice to quit, that there is an implied contract growing out of the circumstances of the case, that the person in possession is to remain until the landlord notifies him to the contrary. The tenant is not in fault; he is in possession by the consent of the landlord, with an understanding that he is to remain until the landlord notifies him.

Is this such a case? The vendor sells or agrees to sell to the vendee. He takes his notes for the purchase-momey, and gives a bond that he will make titles on the performance by the vendee of his contract. On the faith of the vendee's promise, he puts him in possession to hold till the maturity of the notes which is a fixed time. The day comes—the notes are dishonored—can it, with any sort of fairness be persumed that there is an understanding that the vendor shall still keep the land until the vendee notifies him to leave? His right to sue, in our judgment, attaches immediately on the default of the vendee. He knows that he has broken his promise, that he has violated the bargain under which he went into possession and notice to him that this it is so, is wholly useless. He did not go in to stay during the will of the landlord, but for a fixed period, to-wit: till the notes matured. At that period, it was understood, the character of his holding was to cease. He was to become the legal owner. He fails to perform the condition agreed upon, and we see no ground for any presumption that he was to hold longer, or until the vendor notified him to quit.

This question is very fully discussed in 7 Cowen 747, in the case of Jackson *ex. dem.* Church vs. Miller, and the authorities cited, and though it is there admitted, that there is some conflict of the authorities, yet it is clearly shown that the current of decisions and the reason of the thing is that no notice is necessary. The notice can only be for the pur-

pose of notifying the vendee that the vendor is not willing for him to keep his land and not pay the money. The vendee knows this, already ; he has broken his contract and has no right to a notice that the vendor intends to insist on his rights. On the whole, therefore, we think the instruction of the Court wrong, and we reverse the judgement.