## HUNT *vs.* HARDWICK & COMPANY.

1. In ascertaining the value of a stock of goods in a store at a given time, it is admissible to show what was its value a short time previous thereto.

2. The question being whether one partner was induced to pay a certain price for the interest of his copartner by false representations of the latter, if the seller made such statements solely on information derived from a clerk of both of them, and the purchaser knew that such was the case, the falseness of such statements would not avoid the trade, if the seller correctly reported them as received from the clerk.

3. The verdict is not contrary to law, evidence, or the charge of the court.

(*a.*) If a party to a contract seeks to avoid it on the ground of fraud or mistake, he must, upon the discovery of the facts, at once announce his purpose and adhere to it. If he remains silent, keeps the property received under the contract as his own, and recognizes it by making payments thereon without complaint long after discovery of the fraud, he will be held to have waived his objection, and will be bound as though no fraud had occurred.

Evidence. Fraud. Partnership. Contracts. Before Judge FAIN. Whitfield Superior Court. April Term, 1881.

Reported in the decision.

W. C. GLENN; JOHNSON & McCAMY, for plaintiff in error.

J. E. SHUMATE, for defendants.

SPEER, Justice.

Defendants in error brought their suit against plaintiff in error upon a promissory note for the sum of seven hundred dollars, dated on 11th December, 1875, and due 1st October, 1876, with certain credits thereon, said note payable to H. A. Lowry or bearer.

To the suit defendant below pleaded that the note is now and ever has been the property of the payee, H. A. Lowry. That it was given for a one-half interest in a stock of drugs, medicines, etc., belonging to the defendant, and Lowry, the payee of the note, who had been doing business under the name of Hunt & Lowry. That on the trade defendant bought on the representation of Lowry that there had been an inventory taken of the stock just before the trade, and that it amounted to over two thousand dollars; that there was enough owing to the partnership to pay all its debts. That defendant had no means of knowing how much the stock amounted to without taking an inventory himself. That he relied on the assurance the inventory had been taken. That the books were locked up and the key to the safe was inaccessible at the time of the purchase. That defendant himself had lived at Rome, and had only been in Dalton two or three times since the business of Hunt & Lowry had been carried on, and then only for a few days at a time. Had all confidence in Lowry, his partner; believed his representations, and on them traded. That in fact there was only about $1,000.00 worth of drugs, medicines, etc., in the stock. That it was false there had been another inventory taken; that the accounts on the books, of which there was only a small amount, were nearly all worthless, and that there was on the books, which he had to pay, debts due by the partnership of nearly six hundred dollars.

Under the evidence and charge of the court, the jury returned a verdict in favor of the plaintiffs, whereupon defendant below made a motion for a new trial, which was overruled by the court, and defendant excepted.

The grounds of error in the motion were:

(1.) That the court erred in permitting counsel for plaintiff below to ask D. G. Hunt, defendant, when upon the stand as a witness, the following question: " What amount of goods were in the store at the time of the sale to Lowry?"

(2.) Because the court erred in charging the jury as follows : " The assertion, or representation, by the selling party as to its value and condition, if untrue, will not relieve the buyer of the obligation to inform himself from an examination for himself of his own business, provided he had equal facility to inform himself and was not relying on the information of his partner; and in determining the question of facility and ability to get correct information you may consider any evidence, if there be such, showing a superior knowledge as to the character and sort of business about which they are dealing. If you find that the representations made by the selling party were what he learned from the mutual agent, Garlington, and from the testimony you believe that Hunt knew that this information came from Garlington, then there would be no misrepresentation, if Lowry correctly represented what Garlington had told him."

(3.) Because the jury found contrary to the following charge of the court: " If Lowry represented any thing as a fact, he is bound by the representation, whether he made it honestly or dishonestly, and it makes no difference whether he told what Garlington had said or not, unless he told Hunt he only spoke from what Garlington had told him. The strictest good faith is required among partners, and what would not amount to fraud as to third persons may be such as to a partner."

(4.) Because the verdict is contrary to law, the charge of the court, the evidence and weight of evidence.

1. There was no error in allowing the evidence of D. G. Hunt as to the value of the goods at the time he sold a half interest to Lowry a few months previous to this transaction. It was one step in the mode of arriving at the value of the goods at the last alleged sale made by Lowry to Hunt, and which became an important fact under the issues on trial.

2. Neither was there any error in the charge of the court to the jury as set forth in the second ground of the

motion for new trial. If it be true that the representations made by Hunt to Lowry, by letter or otherwise, were based solely on information derived from the clerk, Garlington, and this fact was made known to Lowry before the sale, under the peculiar facts of this case, the court did not err in charging the jury "that there would be no misrepresentation if Lowry correctly reported to Hunt what Garlington had told him." As to whether this fact was true, there was a conflict in the evidence, and it was proper for the jury to pass upon it.

3. For the same reason, we see no error in our overruling the third ground of the motion for new trial. Whether Lowry made the false representations complained of as coming from the clerk, Garlington, and not on his own knowledge, as we before said, was a question of fact upon which there was a conflict of evidence, and we must presume the jury found on this point their verdict in accordance with their views of the testimony submitted, and adverse to the testimony of defendant. We are not prepared to say the verdict rendered is either against the law or testimony. Apart from the evidence submitted on the part of the plaintiff below, it must be borne in mind that this contract, which it is alleged was induced by fraud and false representation in two very material facts, was, so far as the record shows, not complained of when these false representations were discovered, but with full knowledge of their falsity, if they existed, defendant below went forward and made payments on said note years after it matured, and thus seemingly acquiesced in and ratified the alleged contract made. It is a well settled rule that a party who is entitled to rescind a contract on account of fraud or false representation, when he has full knowledge of all the material circumstances of the case, if he freely and advisedly does any thing which amounts to the recognition of the transaction, or acts in a manner inconsistent with its repudiation, it amounts to acquiescence, and though originally impeachable, the contract becomes

unimpeachable even in equity. Kerr on Fraud and Mistake, 301–2–5; 54 *Ga.*, 384; 48 *Ib.*, 109; 40 *Ib.*, 190.

So, a mistake or fraud from which a party seeks relief must not have arisen from negligence, or a blind and unsuspecting confidence, where the means of knowledge were easily accessible. The party complaining must have exercised at least that degree of diligence which may be fairly expected from a reasonable person. If after a contract induced by the fraud or misrepresentation of another the party injured is silent, and continues to treat the property received under the contract as his own, he will be held to have waived the objection, and will be as conclusively bound by the contract as if the mistake or fraud had not occurred. 3 Otto, 55. If a party seeks to avoid a contract on the ground of fraud or mistake, he must, upon the discovery of the facts, at once announce his purpose and adhere to it. If he be silent, and treat the property received under the contract as his own, and go forward and seemingly ratify and recognize it by making payments thereon without complaint, long after the discovery of the fraud or falsehood, he will be held to have waived the objection, and will be as conclusively bound by the contract as if no fraud or mistake had occurred. He is not permitted to play fast and loose. Delay and vacillation are fatal to the right which had before subsisted. 3 Otto, 62.

Tested by these well established rules applicable to such cases, we are not prepared, under the evidence submitted, to hold there was error in the refusal of this new trial by the court below.

Let the judgment below be affirmed.