## COUCH *et al. v.* CRANE; *et vice versa.*

1. The assignee of a vendee is not subject to the obligation of the contract of sale, except upon his option to enforce it by specific performance. In a suit by a vendor against the assignee of the vendee, praying for a recovery of a personal judgment on the ground that such assignee "assumed or agreed to assume the debts due your petitioner for the purchase of said property," the defendant may call for more definite specification of liability by special demurrer.

2. In a suit by a vendor against the assignee of the vendee, praying for the appointment of a receiver and a sale of the property (the title to which has been retained by the vendor) and an application of the proceeds to the purchase-money debt, where the allegations of the petition do not show any assumption of the debt by the vendee's assignee or a release of the vendee from the payment, the vendee is a necessary party.

3. A vendor of real estate who sells it on credit, delivering possession to the vendee, taking notes, and giving bond to make title, may either sue for the land upon failure to pay the notes; or, upon failure of the purchaser to pay the notes as they mature, he may sue on them to judgment, file a deed and have it recorded, and sell the land as provided by the statute.

4. In a suit by the vendor of land against the vendee's assignee, where he prays for the sale of the land by a receiver to be appointed by the court, and the application of the proceeds to the liquidation of the purchase-price of the land, it is not erroneous to allow the vendee's administratrix to be made a party on her application.

5. A plaintiff can not concurrently pursue inconsistent remedies in the same action; and if he does so without objection, he can not complain that the defendant's answer is responsive to both remedies.

6. If the vendor seeks to recover the land from one to whom the vendee has transferred the vendor's bond to make title, such assignee by equitable plea may require an accounting for the purchase-money paid in part performance of the contract by the vendee. In such an accounting the equities of both parties are to be considered.

7. In order to exercise the right of rescission of a contract for fraud, the defrauded party must act promptly on the discovery of the fraud, and must restore or offer to restore whatever he has received by virtue of the contract, if it is of any value. Neither the answer of the vendee's administratrix nor that of the vendee's assignee contained averments justifying a rescission of the sale.

8. A right of action for injuries arising from fraud is not assignable.

9. In the sale of land and personalty as an entirety, misrepresentation or deceit as to quality, inducing the purchaser to pay an excessive price, may, in a proper case, afford ground for rescission of the contract, or be the basis of an action for damages, but will not authorize an abatement of the purchase-price on the ground of partial failure of consideration.

MARCH 11, 1914.  ON REHEARING, JULY 25, 1914.

Equitable petition. Before Judge Daniel. Fayette superior court. August 27, 1913.

The petition was by A. J. Crane against Mrs. Eva Couch. Its substance was as follows: The plaintiff, on November 16, 1910, sold to Mrs. S. A. Fannie Key a tract of land estimated to contain 530 acres, and certain personal property, for the sum of $27,067, payable as follows: $10,087.50 in cash, and $14,000 in seven annual installments of $2,000, and one of $2,979.50 due on or before January 15, 1919; the deferred payments being evidenced by notes bearing interest at six per cent. per annum from December 1, 1910. A bond for title was executed by the plaintiff to Mrs. Key, wherein the obligor covenanted to convey the property to the obligee on her payment of the purchase-money notes representing the deferred payments. It was stipulated in the bond that should any of the notes remain unpaid for thirty days after maturity, time being of the essence of the agreement, the obligor should have the right to declare all the notes due, and to proceed to collect the same. It was further stipulated that the obligor was to cause the land to be surveyed, and that the last note was to be increased or diminished for such an amount as was represented by the acreage in excess of or less than 530 acres, at the rate of $50 per acre. A survey of the land was had, and the tract was found to contain eleven acres less than the estimated amount, and this deficiency ($550) was credited on the last note. Mrs. Key made the cash payment and paid the note of $2,000 falling due in 1912. On September 12, 1912, she transferred her bond for title to her daughter, Mrs. Eva Couch, who entered into possession of the property and assumed the debt due to the plaintiff for the purchase-money of the property. The second note of the series fell due on January 15, 1913, and was not paid, and default in payment had continued for more than thirty days prior to the suit. The plaintiff demanded payment of the purchase-money of Mrs. Couch, who refused to pay. The property had deteriorated in value, some of the personal property had been sold off, the live stock was being neglected and was in poor condition, and the property would not bring at a sale enough money to satisfy the balance of the purchase-money debt. Mrs. Couch refuses to yield possession of the property. Mrs. Key is dead, leaving no property, and Mrs. Couch has no property except her equity in that purchased from the plaintiff by Mrs. Key. The prayers were, for the appoint-

ment of a receiver, a sale of the property by the receiver to pay the balance of the purchase-price, an injunction to prevent the defendant from selling or encumbering the property, and a judgment against her for the unpaid purchase-money.

At the appearance term the defendant filed a demurrer and an answer to the petition, and at the same term the plaintiff filed a demurrer to the answer. The petition was amended by adding a prayer that the plaintiff recover possession of the property. Afterwards Mrs. Couch, who had been appointed administratrix of her mother, Mrs. S. A. Fannie Key, was made a party defendant in her representative capacity, and filed an answer. The plaintiff filed a demurrer to the answer of the administratrix. The facts alleged in the answer of Mrs. Couch are the same as those averred in her answer as administratrix of Mrs. Key, the two differing only in respect to the relief prayed. The purchase of the property on the terms as alleged in the petition, the payment of one note, and default as to the others are admitted. It is averred that the plaintiff approached Mrs. Key to sell her the property involved in the suit, and that on account of her feeble health she sent her daughter, Mrs. Couch, and her son-in-law, Mr. Couch, to inspect the property. The plaintiff pointed out a herd of cattle and said they were fine stock, that he was running a dairy, that the cattle were producing milk of the daily value of $20, and that the cows were fine Jerseys, giving 100 gallons of milk per day. He pointed out 150 acres of bottom land and represented that it was dry (which it was at that time) and would grow fine summer grass, and that he had used this bottom land for a pasture. He also represented the land as "healthy and free from malaria and all right," and ideally suited for a dairy farm, that he was rapidly making money on it, and that the property was well worth what Mrs. Key contracted to pay for it. It is averred, that these representations were false, in that the condition of the premises was such that it was dangerous to live thereon, because of malaria; that Mr. Couch contracted malaria and died about two years after moving on the place; and that many of the tenants and their families were afflicted with malaria to such an extent as to interfere with their work. The bottom land was practically worthless for pasture, but Mrs. Couch could not discover, at the time of the inspection, that it was not as represented. The cows were not Jerseys, but of a scrub stock, yielding only twelve or

fifteen gallons of milk a day; and the plaintiff was not receiving $20 worth of milk at the time. Upon consummation of the contract with Mrs. Key he told his tenants to remain on the place, as he would be back there within three years to take charge of the premises. The land and personalty were not worth exceeding $12,000. It is averred, that the plaintiff practised an artifice to induce the purchase, by falsely representing himself as a very religious man; that on the occasion of their visit to inspect the property they spent the night at his home, and just before partaking of meals he offered up fervent prayers for divine guidance in the day's business, and these affectations of piety were intended to disarm any suspicion which they might have entertained, and did have that effect; that all of these false representations and artful practises were intended to defraud Mrs. Key into contracting to pay a grossly excessive price for the property; that Mrs. Key erected on the premises two houses of the value of $900, built a wire fence around the pasture land at a cost of $150, and put the land in better condition than it was at the time when purchased. It is admitted that four mules and thirty head of cattle were sold, and that about fifteen head of cattle have died; but it is averred that instead of eleven mules which were purchased, there are now fifteen mules on the premises, which are more valuable than those purchased, and forty-five head of cattle which collectively are worth more than those originally purchased; and that the land and personalty thereon are as valuable as that embraced in the sale to Mrs. Key. It is further averred that the defendants complained to the plaintiff of his misrepresentations, and requested a rescission of the contract, offering to pay rent for the time they were in possession, if he would pay them back the money they had expended; which request the plaintiff refused. The prayer of the administratrix was, that, inasmuch as the consideration had partially failed, and as the payments of her intestate equaled the value of the property, the plaintiff be denied a recovery; and if for any reason this could not be done, she prayed for a recovery of the amount paid by her intestate, and such other relief as might be appropriate. Mrs. Couch expressly prayed for a rescission of the contract, a recoupment of $15,000 damages, and an accounting from the plaintiff of the purchase-money paid to him by her mother in pursuance of the contract of sale, in the event the plaintiff elected to recover the land.

The court overruled the defendant's demurrer to the petition, and sustained the plaintiff's demurrers to both answers. The defendant excepted to this judgment; and the plaintiff by cross-bill excepted to the judgment making the administratrix of Mrs. Key a party defendant.

*W. B. Hollingsworth* and *J. F. Golightly,* for plaintiffs in error in main bill of exceptions. *J. W. Wise,* contra.

EVANS, P. J. (After stating the foregoing facts.)

1. One of the prayers of the petition was for a judgment against Mrs. Couch, to be declared a special lien on the property. The defendant is not liable to the plaintiff on the basis that she was the assignee of the plaintiff's vendee; for it is well settled that the assignee of the vendee is not subject to the obligations of the contract, except upon his option to enforce specific performance. 6 Pom. Eq. Jur. § 851. If the assignee of the vendee is liable to the vendor, it is because of her assumption of the vendee's obligation. The petition alleged that the defendant "assumed or agreed to assume the debts due your petitioner for the purchase of said property." The defendant specially demurred to the sufficiency of this allegation as creating an obligation to pay the notes of the vendee, on the ground that the alleged contract of assumption and the consideration were not pleaded. The defendant was entitled to more specific allegation on this point, and the special demurrer ought to have been sustained.

2. The defendant also demurred specially to the prayer of the petition for a sale of the property by a receiver and an appropriation of the proceeds of sale to the payment of the debt of Mrs. Key, on the ground that the plaintiff was not entitled to this relief unless her mother, the plaintiff's vendee, was a party, so that a judgment might be had against her, adjudging the plaintiff entitled to recover some or all of the unpaid purchase-money due on the notes. The plaintiff would not be entitled to a sale of the property and the application of the proceeds to the payment of the notes, without a judgment fixing the amount due; and the maker of the notes would be a necessary party to this relief. But this error was corrected by the defendant's voluntary motion to have the vendee's administratrix made a party, which was granted by the court.

3. The plaintiff amended his petition, praying a recovery of the property. No objection was made to this amendment. A vendor of

real estate, who sells it on credit, delivering possession to the vendee, taking notes, and giving bond to make title when the purchase-money is paid, may either sue for the land upon the failure to pay the notes or any of them (*Alston* v. *Wingfield*, 53 *Ga.* 18; *McHan* v. *Stansell*, 39 *Ga.* 197); or, upon failure of the purchaser to pay the notes as they mature, the vendor may sue on them to judgment, file a deed and have it recorded, and sell the land as provided by law in such cases. Civil Code (1910), § 6037. Both remedies, however, can not be concurrently pursued in the same action. This right of action against the vendee to recover possession of the property on the vendee's default extends to the vendee's assignee in possession. So that, independently of the plaintiff's right to other relief prayed, the petition stated a cause of action for the recovery of the property.

4. The plaintiff did not strike his prayer for a sale of the property by a receiver for the purpose of applying the proceeds of the sale to the payment of the purchase-money notes. The administratrix of the vendee, who was the maker of the notes, would be a proper, even if not a necessary, party to the grant of this relief; and there was no error in allowing her to be made a party defendant on her own motion.

5. The plaintiff in his petition, as originally filed, prayed judgment against Mrs. Couch for the balance of the purchase-money; and also the appointment of a receiver to sell the property and apply the proceeds thereof to the balance due on the purchase-money debt. He amended his petition, praying for a recovery of the property. The administratrix of the vendee was made a party defendant on her own motion. The plaintiff in his petition as finally amended was pressing inconsistent remedies, i. e., a recovery of the property, and also a recovery of the balance of the purchase-money through the medium of a sale by a receiver. A plaintiff can not pursue inconsistent remedies in the same action. If an appropriate demurrer had been filed, he would have been put to an election; but no such demurrer was filed, and the answer was responsive to both remedies pursued by the plaintiff.

6. Where a vendor sues on his title and recovers the land from the vendee, a rescission ensues by operation of law; for he can not rightfully retain both land and purchase-money. *McDaniel* v. *Gray*, 69 *Ga.* 433. Rescission involves restoration to the original

status, and if the vendor seeks to recover the land, the vendee by equitable plea may require an accounting for the purchase-money paid in part performance of the contract by the vendee. In such an accounting the vendee is to be charged with damages occasioned by her breach and a fair rental value of the property during the time it was held in possession under the agreement. *Lytle* v. *Scottish American Mortgage Co.,* 122 *Ga.* 458 (50 S. E. 402). The assignee of a bond for title acquires all the rights and equities which the assignor has therein. *Walker* v. *Maddox,* 105 *Ga.* 253 (31 S. E. 165) ; *Burney Tailoring Co.* v. *Cuzzort,* 132 *Ga.* 852 (65 S. E. 140). When Mrs. Key transferred her bond for title to Mrs. Couch, the latter acquired all of Mrs. Key's equities therein, which embraced a right to have an equitable accounting from the vendor for so much of the purchase-money as was paid to him by Mrs. Key in pursuance of the contract of sale. The 27th paragraph of Mrs. Couch's answer is as follows: "But defendant says that it would be inequitable and unjust to allow plaintiff to take charge of and recover this property from her without refunding and repaying the money her mother paid out. She says she is willing to account for every dollar in rents that the place is worth, and let him account to her for the interest on the money which she paid out two years ago, and that it would be equitable to have an accounting between her and said plaintiff; that she be made to account for the rents of the place, and he should be made to account for the interest on the money that she has paid out, and if he wants the property back, she is willing for him to take it, provided he return her money; but if he is not willing to return her money with interest, then she prays that the court find that she has paid all the place is worth," etc. In the concluding sentence of paragraph 29 of her answer she prays: "that the court see to it that she is not molested, and that this property is not taken from her, and that she be not caused to lose the money which her mother turned over to her; but that the court wait and have an accounting between her and said plaintiff, and let a jury pass upon the question, and that the court award this place; and if not, that the court award her the money expended by her mother." Her answer also contained a prayer for general relief. While the answer praying for an equitable accounting may not have been technically drawn and may be open to special demurrer, yet, as against a general demurrer, it is sufficient

to require the submission of the matter to a jury, and should not have been stricken as a whole. So long as the plaintiff is insisting upon both of his remedies, he can not object to an answer responsive and appropriate to both remedies.

7. Neither the vendee nor her assignee is entitled to a rescission of the contract on the ground of fraud, under the facts alleged in their answers. For the exercise of the right of rescission of a contract for fraud, the defrauded party must act promptly on the discovery of the fraud, and must restore or offer to restore whatever he has received by virtue of the contract, if it is of any value. Civil Code (1910), § 4305; *Hunt* v. *Hardwick*, 68 *Ga.* 100; *Jordy* v. *Dunlevie*, 139 *Ga.* 325 (77 S. E. 162). There is a general averment in the pleas that Mrs. Couch made complaint to the plaintiff and asked for a rescission of the contract, agreeing to pay him rent on the place for what time she and her mother had occupied the same, provided he would pay them back the money they had expended, which the plaintiff refused. It does not appear when this offer was made. But it does appear that the alleged fraudulent acts and representations complained of were known to both Mrs. Couch and her mother when the latter, more than a year after she had been in possession of the property, paid the first purchase-money note. If the offer of restoration occurred prior to this time, and the vendee, with a full knowledge of the alleged fraudulent acts and conduct of the plaintiff, paid to the plaintiff one of the purchase-money notes, such payment would amount to a waiver of the fraud and an affirmance of the contract, and estop the defendant from claiming a rescission of it. *Tuttle* v. *Stovall*, 134 *Ga.* 325 (67 S. E. 806, 20 Ann. Cas. 168). If the offer to restore was made after the payment of the note with knowledge of the fraud, she can not disaffirm a contract after electing to perform it. There is still another reason why the administratrix can not have rescission of the contract, and that is because her intestate conveyed her equity and rights in the property before her death, and put it out of her power to restore the status.

8. Mrs. Couch as assignee of her mother has no right of action against the plaintiff on account of the fraud alleged to have been practised on her mother. A right of action for injuries arising from fraud can not be assigned. Civil Code, § 3655; *Morehead* v. *Ayers*, 136 *Ga.* 488 (71 S. E. 798).

9.   Is the administratrix of the vendee, under the allegations of her answer, entitled to have an abatement of the purchase-price on the ground of failure of consideration? The representations of the plaintiff are not alleged to be warranties.   Those representations are alleged to have been fraudulent statements made with the intent to induce the vendee to pay a larger price for the property than it was actually worth.   There is a clear distinction between the rule of law touching a misrepresentation upon which one has acted to his injury in the purchase of property, and a warranty touching the character and quality of the property sold.   Misrepresentations or other deceptive means used to induce the purchase may afford ground for rescission of the contract, or be the basis of an action for damages; in such case the action is not based on any warranty, but upon the fraudulent conduct practised.   A warranty enters into and forms a part of the contract between seller and purchaser.   And in case the purchaser is sued for the purchase-money, he can recoup or offset any damages he may have sustained in consequence of the breach.   *Newman* v. *Claflin*, 107 *Ga.* 89 (32 S. E. 493).   The administratrix is not seeking to recover damages by way of cross-action for any deceit on her intestate, but to have an abatement of the purchase-price on the ground that there is a failure of consideration.   The contract of sale is expressed in writing, and the administratrix can not set up any express parol warranty by way of addition to or in variance of the writing.   Moreover, no judgment is sought against the administratrix.   We reach the conclusion that the plea of failure of consideration is not good in law.

*Judgment on main bill of exceptions affirmed in part and reversed in part; on cross-bill affirmed.   All the Justices concur.*