1. The holder of a junior security deed is entitled to avail himself of the principle ruled in Polhill v. Brown, 84 Ga. 338 (10 S.E. 921), and cases following it, to the effect that although the vendee of land conveyed as *Page 525 
security may be admitted into possession, yet he will hold it as security for the debt, and is accountable for the rents and profits received by him, and when these amount to enough to discharge the debt his right to the possession ceases. The record before us does not present the question whether the principle is applicable to a situation where the physical condition of the property at the time the creditor's possession began was such that the rents and profits were insufficient in amount to discharge the debt, but these only became sufficient by reason of improvements placed by him on the property.
2. While true that when a creditor who had taken a deed from his debtor to secure the debt pursued the statute (Code, § 67-1501), sued his claim to judgment, filed a deed reconveying to his debtor the land in question, had his execution levied thereon, and the property was sold to him at judicial sale, after he had obtained the sheriff's deed his title, legal and equitable, became complete and indefeasible (Crawford v. Pritchard, 81 Ga. 14, 6 S.E. 689), yet if the possession thus acquired be by virtue of a void sale by the sheriff, the creditor acquired no more right to the property than if he had taken possession under the security deed on account of default in the payment of the debt. Compare Coates v. Jones, 142 Ga. 237 (82 S.E. 649).
3. When the holder of a deed to secure debt pursues the remedy provided in the Code, § 67-1501, it is essential that the purchase-money or secured debt be reduced to judgment. The "judgment" here referred to means a judgment in personam against the maker of the debt.
4. When suit was brought against two non-residents of the State, and a judgment against the defendants in personam was rendered, which was void because based alone on service by publication, and when the judgment also purported to be a special judgment upon described real estate, the declaration therein containing every essential allegation to indicate that the pleader sought to bring itself within the provisions of the Code § 67-1501, except it alleged non-residence of the defendants, and prayed that service be perfected by publication; this being followed by making, filing, and recording the quitclaim conveyance and a levy and sale of the property by the sheriff, the judgment was void, and the purchaser acquired no title, notwithstanding the provisions of the Code, § 81-205, that "Where any non-resident . . shall claim or own title to or any interest . . in any real or personal property in this State, service on such non-resident . . owner or claimant may be made by publication in cases affecting such property where proceedings are brought . . . to establish, enforce, or foreclose liens thereon."
5. Although it has been ruled that a purchaser at a void judicial sale made in pursuance of a judgment setting up a special lien under the provisions of a security deed is subrogated to whatever rights the holder of the security deed would have had, had he acquired possession under his deed (Ashley v. Cook. 109 Ga. 653, 35 S.E. 89), and while ordinarily, under the maxim "He who would have equity must do equity" (Code § 37-104), the plaintiff must pay or tender to the creditor the amount of principal and interest due (compare Biggers v. Home Building Loan Association, 179 Ga. 429, 176 S.E. 38, and cit.), still, under the allegations as to possession, the large amount of profits enjoyed, *Page 526 
an offer to pay the amount due, and the prayer for an accounting, it is not necessary that a formal tender be made. Franklin v. Cruce, 187 Ga. 58 (200 S.E. 135), and cit.
6. Under the authority of the decision in Benedict v. Gammon Theological Seminary, 122 Ga. 412 (50 S.E. 162), the petition was not subject to demurrer on the ground that plaintiff was barred by laches and was estopped to maintain the suit, although the instant suit was instituted more than six years after defendant's action in the city court, having for its object the bringing to sale the property described in the security deed, and after the purchaser who bid in the property at public sale resold the same to one of the defendants herein, the deed of the plaintiff in error being eighteen years old, and given to secure a debt nineteen years past due.
(a) Nor is the result altered by the fact that in the meantime he has entered into an agreement with the defendant in error by which the latter was induced to advance money with which to dissolve an existing loan on the property, under an agreement that the security deed to the defendant in error would be superior to that held by the plaintiff in error.
(b) It is the office of a demurrer to deal with the sufficiency of the allegations actually made. Constitution Publishing Co. v. Stegall, 97 Ga. 405 (24 S.E. 33); Clarke v. East Atlanta Land Co., 113 Ga. 21 (38 S.E. 323).
(c) If facts exist which do not appear on the face of the petition, but which work an estoppel on the ground of laches or otherwise, such facts are the subject-matter of a plea, but can not be taken advantage of by demurrer.
7. It was erroneous to sustain the demurrer and dismiss the action.
 No. 13562. JANUARY 14, 1941. REHEARING DENIED FEBRUARY 14, 1941.
M. L. Hirsch filed his petition in equity against the Northwestern Mutual Life Insurance Company, Sol I. Yudelson, Mrs. Alice Steele Powers, and Ben W. Steele, alleging substantially the following facts: On October 4, 1920, Steele executed and delivered to Hirsch his promissory note, under seal, for $9000, and no part of the principal of said note was paid, and no interest since December 1, 1926. The note was secured by a deed to a half undivided interest in property now known as No. 59 Whitehall Street in the City of Atlanta. Thereafter Steele and Mrs. Powers borrowed from the Northwestern Mutual Life Insurance Company $50,000, and secured the loan by a deed dated October 24, 1927, conveying to the company title to said property to secure the payment of the loan. Immediately preceding the consummation of said loan and execution of the security deed Hirsch entered into a "subrogation" agreement with *Page 527 
Steele and the insurance company, by the terms of which it was agreed that the loan of $50,000 to Steele and Powers would be superior to the lien of the deed from Steele to Hirsch. Thereafter Steele conveyed his half undivided interest in said property to Mrs. Powers, subject to the loan in favor of the insurance company, and subject to the loan in favor of Hirsch. On January 4, 1934, the insurance company filed in the city court of Atlanta a suit against Steele and Powers on the note of $50,000. On March 6, 1934, a personal judgment was rendered in favor of the insurance company and against Steele and Powers, for $45,000 principal, and $1252.80 interest. A copy of the proceedings in the city court, and of the judgment and fi. fa., were by amendment made a part of the petition. The material portions of said suit were as follows:
"The defendants herein are Ben W. Steele and Alice S. Powers, formerly residents of Fulton County, Georgia, but now non-residents of the State of Georgia. . . On the 24th day of October, 1927, said Ben W. Steele and Alice S. Powers borrowed from said The Northwestern Mutual Life Insurance Company the sum of $50,000.00." Attached to the petition were copies of notes evidencing the debt, with allegations that the debt was secured by a deed conveying the property involved in this litigation, and that said loan had been reduced by a payment of $5000, leaving a balance due of $45,000.
In the city-court suit it was further alleged: "The claim of the Northwestern Mutual Life Insurance Company for which this action is brought is balance of principal of said loan, $45,000.00, with interest thereon from April 24, 1933, at the rate of 5 1/2% per annum; the sum of $2691.36 advanced for taxes, with interest thereon from December 9, 1933, at the rate of 7% per annum, and for 10% on said $45,000.00 balance of principal and on accruing interest thereon from April 24, 1933, as attorney's fees." The prayer was as follows: "Wherefore petitioner prays for: (a) General judgment against said Ben W. Steele and Alice S. Powers, for the sum of $45,000.00 principal, with interest thereon from April 24, 1933, at the rate of 5 1/2% per annum, for the sum of $2691.36 advanced for taxes, with interest thereon from December 9, 1933, at the rate of 7%, and for 10% of said principal and interest as attorney's fees. Petitioner further prays for a special judgment against and upon said real estate, setting up and establishing *Page 528 
a lien thereupon for the amounts herein stated, and for which this suit is brought. Petitioner further prays for an order authorizing and directing service in this case upon the defendants herein, to be perfected by publication as provided by law." The court ordered service by publication and thereafter entered an order declaring service perfected by publication.
At the March term (March 6), 1934, of the city court, a jury rendered the following verdict: "We, the jury, find in favor of the plaintiff, The Northwestern Mutual Life Insurance Company, against the defendants, Ben W. Steele and Alice S. Powers, the sum of forty-five thousand ($45,000) dollars principal; the sum of twelve hundred and fifty-two dollars and eighty cents ($1252.80) as interest to this date, with accruing interest on said principal sum at the rate of five per cent. (5%) per annum from this date; the sum of twenty-seven hundred and fourteen dollars and ten cents ($2714.10) advanced for taxes, and interest thereon in the sum of forty-seven dollars and nine cents ($47.09); the sum of four thousand six hundred and twenty-five dollars ($4625.00) as attorney's fees; and the sum of _________ ($) as costs of suit. We further find in favor of the plaintiff the special lien set forth and claimed in the petition in this case, upon and against the real estate described in said petition, for the amounts above stated." On the same day the court entered up the following judgment: "Whereupon it is ordered and adjudged by the court that the plaintiff, The Northwestern Mutual Life Insurance Company, have judgment against the defendants, Ben W. Steele and Alice S. Powers, for the sum of forty-five thousand ($45,000.00) dollars principal; the sum of twelve hundred and fifty-two dollars and eighty cents ($1252.80) as interest to this date, with accruing interest on said principal sum at the rate of five per cent. (5%) per annum from this date; the sum of twenty-seven hundred and fourteen dollars and ten cents ($2714.10) advanced for taxes, and interest thereon in the sum of forty-seven dollars and nine cents ($47.09); the sum of four thousand six hundred and twenty-five ($4625.00) dollars as attorney's fees; and the sum of _______ ($) as costs of suit; and that plaintiff have judgment specially and a special lien for the amounts above named, upon and against the following described real estate, to wit:" A description of the property follows. This judgment was signed by the judge and by the attorney for the plaintiff. *Page 529 
On said judgment a fi. fa. was issued, the material portions of which are as follows: "We command you that of the goods and chattels, lands and tenements of Ben W. Steele and Alice S. Powers, and especially the following described property [here was a description of the property involved in this litigation and conveyed in the security deed to the Northwestern Mutual Life Insurance Company], you cause to be made the sum of [here was enumerated the several amounts contained in the judgment hereinbefore set out], . . which, at our city court of Atlanta for said county, to wit, on the 6th day of March, 1934, the Northwestern Mutual Life Insurance Company as plaintiff recovered against said Ben W. Steele and Alice S. Powers as defendants." A deed for levy and sale having been filed, the fi. fa. was levied on the property involved in this litigation as the property of Ben W. Steele and Alice S. Powers to satisfy said fi. fa. The property was thereafter sold by the sheriff, and at said sale was purchased by the Northwestern Mutual Life Insurance Company for $500.
The petition of Hirsch alleged, that there was no personal service on either of the defendants in said case; that both of said defendants were non-residents of the State of Georgia, and that said action was strictly in personam and in no wise in rem; that on May 4, 1936, the Northwestern Mutual Life Insurance Company by warranty deed conveyed said property to Sol I. Yudelson for a consideration of $75,000; that the judgment was void for the reason that the same was based upon substituted service by publication, and the sheriff's deed was likewise void and did not operate to divest the equity of redemption in favor of Alice S. Powers, and did not operate to divest the lien of petitioner's security deed on said property; that since April 26, 1934 (the date of the sheriff's deed), the Northwestern Mutual Life Insurance Company and Sol I. Yudelson have been in possession of said property and have collected many thousands of dollars in rent therefrom, the exact amount of which petitioner is unable to state, and he alleges that the rents and profits, deducting therefrom taxes and interest due on the loan in favor of the Northwestern Mutual Life Insurance Company, were sufficient to entirely extinguish said first loan, and, if not, would materially reduce the principal amount due thereon; that Hirsch was ready, willing and able to pay the Northwestern Mutual Life Insurance Company the amount due on its first loan, *Page 530 
if, after an accounting of the rents and profits, it developed that any further sums were due on said loan; that he was unable to make a tender at the time of filing his petition, for the reason that he was not informed as to what amount was due on said loan, and this could not be ascertained without an accounting; that at the time of the filing of the petition the property was being rented for approximately $1000 a month, and the reasonable market value of said property was $100,000; and that Hirsch was without an adequate remedy at law. He prayed that the defendants Alice S. Powers and Ben W. Steele be served by publication as provided by law, that Hirsch have judgment against the property in rem, binding only a half undivided interest therein, and to the extent of the security held by him. He prayed for a receiver, injunction, and accounting, cancellation of deeds, and general relief.
Other facts appearing in the petition were as follows: The note of Hirsch matured six months after its date. No part of the principal was paid, and the note was nineteen years past due when Hirsch initiated this litigation. He was a second mortgagee at the inception of his loan, and occupied that position throughout until the foreclosure of the loan deed of the insurance company. When faced with the maturity of the prior security deed Hirsch co-operated in procuring an extension thereof or a substitution of a new loan. The loan of the Northwestern Insurance Company was for the purpose of taking up and paying off a then maturing loan in a like amount, secured by a deed to the New England Mutual Life Insurance Company. In order to induce the Northwestern to make this loan, Hirsch agreed in writing that it would be subrogated to the rights of the New England Company under its security deed, and that the deed to the Northwestern should be superior to the lien of the Hirsch security deed. This agreement is attached as an exhibit to the Hirsch petition. He alleges, that this subrogation agreement contains no words of conveyance, and does not purport to convey title to the Northwestern Company; that it expressly so limits its operations as to make superior the lien acquired by the Northwestern Company to the lien of petitioner. In the foreclosure proceeding it was alleged that the Northwestern's debt was secured by deed to secure debt, and the property was described therein. The petition prayed for establishment and setting up of a special lien thereon for the amount of the indebtedness set forth in the petition. *Page 531 
In the quitclaim deed for levy and sale is the following recital: "This deed is made for the sole purpose of conveying the title to the above-described real estate to said Ben W. Steele and Alice S. Powers, in order that it may be levied upon and sold and by virtue of the special lien set up and established in said judgment and the fi. fa. based thereon against the above-described real estate, said The Northwestern Mutual Life Insurance Company hereby quitclaiming its right, title, and interest in and to said real estate, in order that it may be so sold at public sale after levy thereon as required by law." Hirsch alleged that this deed for levy and sale did not convey to Ben W. Steele and Alice S. Powers title to said property, but only conveyed to them a half undivided interest in said property, the other half interest having previously vested in petitioner by virtue of the conveyance from Steele to petitioner, heretofore referred to.
Steele and Powers were duly served by publication. Mrs. Powers intervened and by order of the court was made a party plaintiff, she having adopted the material allegations of the petition of Hirsch as amended. She further alleged, that after the execution of the deeds to Hirsch and the Northwestern Mutual Life Insurance Company, Steele, her brother, conveyed his interest in said property to her, subject to said loans; that pending this action her brother died; that she was his next of kin and sole heir at law; and that Steele was not a necessary party to this litigation. She prayed for substantially the same relief as was prayed for by Hirsch.
The Northwestern Mutual Life Insurance Company's general demurrer was as follows: (1) The petition sets forth no cause of action against this defendant. (2) There is no equity in the petition. (3) The petitioner is not entitled to the relief sought, or to any relief whatsoever. (4) The petitioner is barred by laches, and is estopped to maintain said suit; that the purpose and effect of the subrogation agreement was to give to this defendant, as an inducement to make the loan of $50,000, the same security and title as that of the New England Mutual Life Insurance Company, with the same priority that it then had over the loan deed of petitioner. This defendant in reliance thereon advanced $50,000 to discharge the indebtedness to the New England Mutual Life Insurance Company, and by reason thereof petitioner is estopped from denying this defendant's superior right and title and lien upon said property *Page 532 
and priority thereof to that of petitioner. A special demurrer to various paragraphs of the petition was based on the grounds that the allegations were either irrelevant and immaterial, or were mere conclusions of the pleader, without sufficient facts stated to support them. The general demurrer was sustained and the action was dismissed, and Hirsch excepted.
None of the rulings announced in the headnotes will be enlarged upon, except the third and fourth.
3. The anomalous character of the deed to secure debt was commented upon in Shumate v. McLendon, 120 Ga. 396, 399-401
(48 S.E. 10). It was there observed that it seems to be peculiar to the law of this State, and that "its legal status has been fixed by judicial decisions considering alone the nature of the instrument, and, in many cases, paying little or no regard to analogies." Contrary to the rule at common law, mortgages in this State pass no title. Code, § 67-101. Therein lies the chief distinction between a mortgage and a security deed. The one is a lien; the other passes title. Powell on Actions for Land, § 386;Williamson v. Orient Insurance Co., 100 Ga. 791
(28 S.E. 914), and cit.; Ashley v. Cook, 109 Ga. 653, 655 (supra), and cit. Apparently our first legislative enactment on the subject is the act approved December 12, 1871 (Acts 1871, pp. 44-45). That act, among other things, provided in effect that when any person conveys real property to secure any debt, such conveyance shall pass the title, "and shall be held by the courts of this State to be an absolute conveyance with the right reserved by the vendor to have said property reconveyed to him upon the payment of the debt or debts intended to be secured, agreeable to the terms of the contract, and not a mortgage." That act, however, made no provision for the creditor to sell the property in payment of his debt. The following year our lawmakers amended the act of December 12, 1871, by adding "that when anyjudgment shall be rendered in any of the courts of this Stateupon any note or other evidence of debt, which such conveyance of realty was made and intended to secure, it shall and may be lawful for the vendee to make and file and have recorded in the *Page 533 
clerk's office of the superior court of the county wherein the land lies, a good and sufficient deed of conveyance to the defendant for said land; and if the said obligor be dead, then his executor or administrator may, in like manner, make and file such deed without obtaining an order of the court for that purpose; whereupon the same may be levied on and sold under saidjudgment, as in other cases; provided, that the said judgment
shall take lien upon the land prior to any other judgment or incumbrance against the defendant." (Italics ours.) Acts 1872, p. 47. The act of 1872 has never been repealed. A part of it is codified as section 67-1301, but the portion above quoted is omitted.
In 1894 (Acts 1894, p. 100) was passed an act the title whereof was "An act to provide for the levy and sale of property where the defendant in fi. fa. has an interest therein but does not hold the legal title thereto, and to provide for the distribution of the proceeds arising from such sale; and for other purposes." It made no reference to the act of 1871 or the act of 1872, supra. It is codified as section 67-1501; and instead of the language of the act of 1872, "when any judgment shall be rendered . . upon any note or other evidence of debt which such conveyance of realty was made and intended to secure," the language of the Code is, "and the purchase-money or secured debt has been reduced to judgment," with a further provision that after a sale "the proceeds shall be applied to the payment of such judgment." The act of 1872, supra, in our opinion contemplated a judgment in personam; for it was to be a judgment "upon any note or other evidence of debt." We are strengthened in this view by the proviso, "that said judgment shall take lien upon the land prior to any other judgment or incumbrance againstthe defendant." (Italics ours.) Since that portion of the act of 1872 has never been expressly repealed, although omitted from the Code, we conclude that it would not be correct to hold that in codifying the act of 1894 (Code, § 67-1501) the words therein, "and the purchase-money or secured debt has been reduced to judgment," means other than a judgment on the debt, i. e., a personal judgment against the defendant for the amount of the debt. The language is consistent with this view. Indeed this position is strengthened by a reference to the latter part of the section, to wit, "and thereupon the same may be levied upon and sold as other property of said defendant, and the proceeds shall be applied to the payment of such judgment." *Page 534 
4. We recognize the principle, as contended for by counsel for the defendant in error, that a judgment may be good in part and bad in part, and the fact that the scope of the judgment did by its terms embrace a general judgment in personam against the defendant would not in a proper case destroy its efficacy as a means of subjecting the property by enforcing the security.Harvard v. Davis, 145 Ga. 580, 584 (89 S.E. 740). We are not holding this sale void because of the invalid ingredient in the judgment that it was to operate as such in personam, but because the entire judgment was void. The act approved December 14, 1895 (Acts 1895, pp. 42-43; Code, § 81-205), was not intended to be used in such a proceeding as that instituted by the defendant in error in the city court of Atlanta under the Code, § 67-1501. Whether or not the act last referred to can be applied in any instance except in equity cases presents a question broader than that made by the facts of this record. By its own terms, however, it does not reach a case of the character of the one before us. It is insisted that subsection 3 of the act authorizes what was here done. Omitting the other sections, the act reads as follows: "Where any non-resident or person unknown claims or owns title to, or an interest, present or contigent, in any real or personal property in this State, service on such non-resident or unknown owner or claimant may be made by publication in cases affecting such property where proceedings are brought. . . 3. To establish, enforce, or foreclose liens thereon." The answer to this contention is that this was not a proceeding brought to establish, enforce, or foreclose a lien on the property. It was a suit by one holding, not a lien, but title. Its object was to have the property sold and the proceeds of the sale applied to a judgment it sought to obtain against the debtor on the secured debt. Neither the title of the act of 1894 (supra) nor that part of its body dealing with this subject mentions the word "establish." "enforce," or "foreclose," or even the word "lien." The title of the act of 1894, as hereinbefore pointed out, was "to provide for the levy and sale of property," etc., and "to provide for the distribution of the proceeds arising from such sale, and for other purposes." It is true that an addition to a prayer for a general judgment against the defendant for the amount of the debt and taxes paid by it, and another for an order directing service by publication, a third prayer was for "a special judgment against and upon said *Page 535 
real estate setting up and establishing a lien thereupon for the amounts herein stated and for which this suit is brought." The verdict of the jury and the judgment of the court undertook, among other things, to give effect to this prayer. This prayer, however, could not change the character of the suit, nor could the verdict or judgment, one or both, give vitality to the inherent weakness of the proceeding. Irons v. AmericanNational Bank, 178 Ga. 160 (172 S.E. 629), is relied on by defendant in error. That decision does not sustain counsel. That was a petition to foreclose a security deed as an equitable mortgage. The parties were in a court of equity. The creditor here pursued no such remedy. Compare headnotes 3 and 4(d) of the Irons case; Burgess v. Ohio National Life InsuranceCo., 177 Ga. 48 (169 S.E. 364).
Judgment reversed. All the Justices concur.