## A95A0642. SOUTHERN LAND & CATTLE COMPANY v. BROCK et al.
### (460 SE2d 843)

RUFFIN, Judge.

We granted the application of Southern Land & Cattle Company ("Southern") for a discretionary appeal from the trial court's order dismissing its garnishment against Marie Brock's employer. Southern filed to garnish to satisfy its default judgment against Marie and Perry Brock, the defendants in fi. fa. It is the second such appearance of this case before us. See *Southern Land &c. Co. v. Brock*, 213 Ga. App. 3 (443 SE2d 647) (1994).

On July 16, 1984, the Brocks, as buyers, entered into an installment land sales contract with Southern, as seller, to purchase a parcel of land. The Brocks made some installment payments but defaulted on later payments, and Southern sued for the breach. In its complaint, Southern sought damages for the breach and, in addition, requested a special lien on the property under OCGA § 44-14-210. The Brocks failed to answer the complaint, and on June 13, 1986, the court awarded Southern a default judgment.

Southern subsequently repossessed the land and sold it to a third party. When that party defaulted on payments to Southern, it repossessed the land again and sold it to another party. It is undisputed that the total amount received by Southern from both sales was insufficient to satisfy the amount of the judgment against the Brocks.

On November 3, 1992, Southern filed a garnishment against Marie Brock's employer to collect the remaining balance of the judgment. Brock traversed the garnishment, contending that under OCGA § 44-14-210 Southern had an election of remedies and that because it elected to repossess and subsequently sell the property, it could not also collect on the judgment. The trial court agreed with Brock and dismissed the garnishment. Because we do not find that OCGA § 44-14-210 precludes Southern from seeking other remedies to satisfy its judgment, we reverse.

OCGA § 44-14-210 (a) generally provides for the levy and sale of property where the defendant in fi. fa. has an interest in the property

but does not hold legal title to it. See *Hirsch v. Northwestern Mut. Life Ins. Co.*, 191 Ga. 524 (3) (13 SE2d 165) (1941). But contrary to the trial court's order, Southern is not limited to satisfying its judgment under OCGA § 44-14-210. That section provides only one of several methods under which a party may attempt to satisfy its judgment resulting from a breach of the agreement where the buyers defaulted on installment payments under an installment land sales contract. See generally 7 Powell on Real Property, Par. 938.24 (rev. ed. 1995). The language of OCGA § 44-14-210 (a) is permissive and in pertinent part provides that if the holder of legal title, in this case Southern, seeks a levy and sale of the property, then "the proceeds shall be *applied to the payment* of the judgment. . . ." (Emphasis supplied.) The statutory language is clear that when such a party seeks this remedy, it is not selecting the exclusive method by which it can satisfy its judgment but is merely availing itself of a remedy that will provide payment toward the judgment balance. There is nothing in the statute that precludes a judgment creditor from seeking further relief if its judgment is not satisfied after application of the sale proceeds. See generally *Oliver v. Slack*, 192 Ga. 7 (14 SE2d 593) (1941).

Furthermore, Brock's reliance on *Couch v. Crane*, 142 Ga. 22 (82 SE 459) (1914), is misplaced. The transaction in *Couch* is similar to the instant case. In the complaint, however, the seller sought to have the property sold to pay the balance of the purchase price and in addition prayed for judgment against the purchaser for the unpaid purchase money. The court found that those two remedies were inconsistent and could not be pursued in the same action. Id. at 27. It is clear that to have awarded both the remedies prayed for in *Couch* would result in a double recovery by the plaintiff; she would have recovered the full price of the property after the sale and would also be awarded a judgment for the unpaid purchase money. In this case, however, Southern is seeking only to satisfy the unpaid balance of the judgment, the amount to which both parties stipulated. Accordingly, the trial court erred in granting Brock's traverse and in dismissing the garnishment.

*Judgment reversed. Pope, P. J., Birdsong, P. J., Andrews, Johnson and Smith, JJ., concur in the judgment only. Beasley, C. J., and McMurray, P. J., dissent. Blackburn, J., not participating.*

BEASLEY, Chief Judge, dissenting.

I respectfully dissent. Although Southern invoked OCGA § 44-14-210, it did not follow the statute. OCGA § 44-14-210 (a) requires the seller of real property by an installment contract, who wishes to collect the purchase money when the buyer defaults after having paid some of the purchase price, to follow certain steps. The statute specifies the procedure: 1) reduce the purchase money debt to a judgment;

2) execute a quitclaim deed to the buyer; 3) record the deed; 4) levy upon and sell the property as the debtor's, after the levying officer first gives notice of the levy and time of sale to the vendor and the defendant in fi. fa.; and 5) apply eligible proceeds of sale to the judgment.

Although in the suit on the note Southern sought a "special lien" under OCGA § 44-14-210,[1] it skirted the steps set out in that Code section. It had the title to the land from the beginning, and it was never conveyed to the Brocks. It is true that under the contract the buyer could request a warranty deed when the payments on the principal reached $1,200, but that never occurred. Thus, when the Brocks relinquished possession, Southern had its property back totally, both title and possession. It also had the amounts already paid on the installment land contract. When it obtained a judgment for the balance of the note, it was required to deed the property to the Brocks because it then had a judgment instead of a purchase money debt.

Southern did not "make and execute . . . a quitclaim conveyance to the . . . property," and Southern of course did not "file and have the quitclaim conveyance recorded in the clerk's office." OCGA § 44-14-210 (a). Had Southern done so, the property would then have been titled to the Brocks, and Southern could have "levied upon [it] and sold [it] as other property of the [Brocks]." Id. The proceeds would be applied to payment of the judgment.

To use this procedure to satisfy its money judgment, Southern was required to assure "notice of the levy and time of sale . . . to the defendant in fi. fa.," i.e., the Brocks. Southern did not do this either, so they had no opportunity to protect their interests by ensuring that the sale brought a reasonable price.

Southern wants its cake (the land, which it always had title to and which it regained possession of) and wants to eat it, too (obtain money for it by way of garnishing on a judgment based on the defaulted promissory note). That it cannot have, as stated in *Couch v. Crane*, 142 Ga. 22, 26-28 (3, 6) (82 SE 459) (1914):

"A vendor of real estate, who sells it on credit, delivering possession to the vendee, taking notes, and giving bond to make title when the purchase-money is paid, may either sue for the land upon the failure to pay the note or any of them [cit.]; or, upon failure of the purchaser to pay the notes as they mature, the vendor may sue on them to judgment, file a deed and have it recorded, and sell the land as provided by law in such cases. Civil Code (1910), § 6037.[2] . . . Where a vendor sues on his title and recovers the land from the vendee, a rescission ensues by operation of law; for he can not rightfully retain

---

[1] And OCGA § 44-14-321, although that is not applicable.
[2] Now OCGA § 44-14-210.

both land and purchase-money. [Cit.] Rescission involves restoration to the original status. . . ."

Vendor Southern did not have to sue on its title to recover the land from the vendee Brocks; they simply left, and Southern regained possession. That constituted rescission of the Installment Land Sale Contract. If Southern had resold the property to a third party for a greater sum than it was sold to the Brocks, the Brocks certainly would not be entitled to the difference. The property was never theirs.

The majority attempts to distinguish *Couch v. Crane*, supra, on the ground that it prevented a recovery of greater than the contract amount, a circumstance not appearing here, but that distinction does not distance *Couch's* law from this case.

The contract itself included certain remedies of Southern in the event of default. It provides that the vendor could either regain the property or "in lieu" thereof, get a judgment on the unpaid balance of the purchase price.

The language of the statute makes its processes mandatory. See *Campbell v. Gormley*, 184 Ga. 647, 650 (2) (192 SE 430) (1937). The reference to 7 Powell on Real Property, Par. 938.24 (rev. ed. 1995) is not persuasive; no Georgia case has ever stated that the law of this state does not require compliance with OCGA § 44-14-210. It is the prescribed method under Georgia law to bring about a sale of the property to be applied to the debt and then to pursue a deficiency.

The trial court was correct. Southern had no right to garnish Brock's wages because it did not have any right to pursue a deficiency which was not satisfied by the two non-statutory sales.

I am authorized to state that Presiding Judge McMurray joins in this dissent.

DECIDED JULY 14, 1995 —
RECONSIDERATION DENIED JULY 31, 1995 —

*Reagan W. Dean*, for appellant.
*Ellis & Easterlin, George R. Ellis, Jr.*, for appellees.