## WHATLEY *et al.* *v.* MARSHALL.

On the trial of an action brought by Marshall against Whatley to recover land, it appeared from the evidence that on March 15, 1902, Marshall brought suit against Carmichael for specific performance of a contract for sale of the same land, entered into between the two last-named persons in May, 1899, and subsequently obtained a verdict and decree; that on August 19, 1902, pending the suit for specific performance, Carmichael delivered his bond for title for the land to Barrett, who at that time gave his promissory notes to Carmichael for the purchase-price of the land; that on February 7, 1903, while the suit for specific performance was still pending, Barrett sold his interest in the land to Whatley, the defendant in the case at bar, for a stated consideration in money, and the assumption by Whatley of the payment of Barrett's notes to Carmichael, Barrett at the time transferring to Whatley the bond for title Barrett held from Carmichael. *Held:*

1. It was not error to admit in evidence the decree in the suit for specific performance, over the objection that it was not accompanied by the verdict, it appearing that a certified transcript of the whole proceedings in such suit was put in evidence by the plaintiff below, and the verdict was copied in full in the decree which was regularly entered up by the trial judge.

2. Nor did the court err, in view of the facts of the case, in rejecting the testimony of a witness, Moore, offered by Whatley, the defendant, to prove in effect that the plaintiff, Marshall, in the year 1901, told the witness that he, Marshall, had given up the land because he could not pay for it, at the time requesting the witness to buy it, and, if he did not desire to do this, then for him to get some one else to purchase it; that witness did not wish to buy, and therefore informed Barrett of what Marshall had said to witness, and so induced Barrett to purchase the land. Nor was it error, in view of the facts of the case, for the court to refuse to permit Barrett to testify to the effect that, before he bargained for the land, Moore had informed him of what Moore had offered to testify that Marshall had told Moore, and that he, Barrett, bought the land in good faith, relying on such information given him by Moore, and that otherwise he would not have purchased.

3. Where, after Marshall had purchased the land from Carmichael, but prior to the institution of the suit for specific performance by the former against the latter, one Presley, as he testified, being informed by Marshall that he could not pay for the land and that he had given it up, and after Marshall moved from the land, purchased it from Carmichael, giving him notes for the purchase-price, and receiving from the latter a bond for title; and where, about five months after the commencement of such suit for specific performance, and during its pendency, and in accordance with an agreement entered into by Presley, Barrett, and Carmichael, Barrett took Presley's trade for the land "off his hands," and Carmichael delivered up to Presley his purchase-money notes, and Presley returned to Carmichael the bond for title received from him, Presley at the time paying to Carmichael the sum of ten dollars, in consideration of which the latter conveyed to him eight acres of the land, and thereupon Carmichael executed and delivered to Barrett a bond for title to the rest of the land, and Barrett gave his notes to Carmichael for the purchase-price of the land, amounting to ten dollars less than the amount of Presley's notes to Carmichael,—this transaction, entered into and carried out as stated, was a substitution for the contract between Presley and Carmichael, and amounted to a novation, and came within the doctrine of lis pendens; and Barrett and Whatley, who purchased from him, were bound by the decree rendered in the suit for specific performance.

4. The evidence was not sufficient to show that Whatley was induced to purchase the land from Barrett by representations made by Marshall to Whatley.

5. Evidence tending to show that Marshall had paid Carmichael for the land prior to the institution of the suit by the former against the latter was irrelevant, as that matter had been finally adjudicated by the decree rendered in such suit. The admission of such irrelevant evidence in behalf of the plaintiff was, however, not cause for a new trial.

6. The court properly directed a verdict for the plaintiff.

DECEMBER 13, 1912.

Complaint for land. Before Judge Daniel. Upson superior court. January 4, 1912.

*E. F. Dupree, J. Y. Allen,* and *W. Y. Allen,* for plaintiffs in error. *E. C. Armistead,* contra.

FISH, C. J. G. P. Marshall brought an action to recover land and mesne profits against H. T. Whatley and others. The other defendants disclaimed title and any right of possession. The prayer for mesne profits was withdrawn. It appears from the evidence submitted on the trial, that Marshall, on March 15, 1902, brought an action for specific performance against Carmichael, in which action the petition alleged that in May, 1899, Marshall purchased the land now in controversy from Carmichael at a stated price, went into possession, made valuable improvements, and subsequently paid to Carmichael. the purchase-price in full, in accordance with his contract; but that Carmichael refused to convey the land to him. This action pended until April 3, 1906, when a verdict and decree were rendered in behalf of Marshall, requiring Carmichael to execute to him a deed for the land in controversy. The certified transcript of all the proceedings in that action was put in evidence by the plaintiff on the trial now under review. There was evidence to the effect that "a while before Christmas" in 1901, W. S. Presley purchased the land from Carmichael, giving him promissory notes amounting to $260 for the purchase-price, and receiving from Carmichael a bond for title, no cash being paid. On August 19, 1902, according to an understanding entered into by Carmichael, Presley, and Barrett, Presley delivered up to Carmichael the bond for title which the latter had given him, and Carmichael returned to Presley the notes he had given for the purchase-price of the land, Presley at the time paying to Carmichael the sum of $10, and in consideration thereof the latter conveyed to Presley eight acres of the land. At the same time Barrett gave Carmichael his three notes amounting to $250 as the purchase-price for the land, and Carmichael gave Barrett a bond to make him a title when the notes should be paid. On February 7, 1903, Barrett, in consideration of the payment of $100 and the assumption by Whatley of the payment of Barrett's notes to Carmichael, assigned the bond for title which he held from Carmichael to Whatley. Presley testified that, before he purchased from Carmichael, Marshall had informed him, Presley, that he, Marshall, could not pay Carmichael for the land and had given it up. Barrett and Whatley testified that they had purchased the land in good

faith and without any actual notice of the pendency of the suit brought by Marshall against Carmichael for specific performance. There was other evidence which it is unnecessary to set forth. The court directed a verdict in favor of the plaintiff. The defendant moved for a new trial, which being refused, he excepted.

1. One ground of the motion for new trial assigns error upon the admission of a certified copy of the decree in the case of Marshall *v.* Carmichael for specific performance, "on the ground that there is no verdict of a jury attached, upon which a decree should be founded." A certified transcript of the entire proceedings in the case in which such decree was rendered was put in evidence by the plaintiff, and in the decree, which was signed by the presiding judge and the attorneys for the plaintiff, the verdict of the jury was copied in full. It is therefore apparent that the assignment of error is without merit.

2. The 6th ground of the amendment to the motion for new trial was as follows: "Because the following material evidence offered by the defendant was illegally withheld from the jury against the demand of defendant, which defendant offered to prove by T. H. Moore, to wit: 'I got Mr. Barrett to buy it [the land in controversy]. Mr. Marshall told me he had given up the place and could not pay for it, and wanted me to go and buy it. He said, if I did not want to buy it, to get somebody else to buy it. He said he did not want Sol Presley to get it. I did not want to buy the land, and I went to C. S. Barrett to buy it, and I told him what Marshall had told me about it.'" The 7th ground of the motion complained of the refusal of the court to permit C. S. Barrett to testify as follows: "Thomas Moore told me that Marshall told him that he had given up the land and said land was for sale. Yes, T. H. Moore told me that plaintiff, G. P. Marshall, had told him he had given up the land to Carmichael; and asked him, Moore, to go buy it, that he did not want Solomon Presley to get it, and if he, Moore, did not want the land, to see if he could get some one else to buy it. After this conversation with Moore I bought the land. I saw Presley before I bought the land, and he said he had bought the land. I believed the statement of Moore, that is, that Marshall had told him, Moore, that he had given up the land. Moore told me the land was for sale, and I think he was the first one to tell me. In buying the land I relied

upon what Moore told me, that is, that G. P. Marshall had told him, Moore, that he, Marshall had given up the land to Carmichael and asked him to buy it, as he did not want Solomon Presley to get it, and if he, Moore, did not want the land, to see if he could not get some one else to buy it. I would not have bought the land if Moore had not told me what he did. I thought Moore was authorized to speak. I relied upon Moore's statement to me." It is contended for the plaintiff in error that this testimony of Moore and Barrett was admissible for the purpose of showing that Marshall, the plaintiff below, was estopped from claiming the land as against Barrett and Whatley. The court properly rejected this proffered testimony. It appears from the brief of evidence that Moore was permitted to testify in hæc verba to everything set forth in the 6th ground of the motion for new trial, except as follows: "I got Mr. Barrett to buy it. . . I went to C. S. Barrett to buy it, and I told him that Marshall had told me about it." It also appears from Moore's testimony that the conversation in which Marshall gave him the information which he communicated to Barrett occurred in 1901, while Marshall was in possession of the land and' operating a sawmill thereon. This was prior to the commencement of the suit by Marshall against Carmichael for specific performance, which was begun March 15, 1902. It does not appear when, whether prior or subsequently to the beginning of such suit, Moore informed Barrett of what Marshall had said, nor do we think it material whether Barrett received such information before or after such suit was brought. "Decrees ordinarily bind only parties and their privies; but a pending suit is a general notice of an equity or claim to all the world from the time the petition is filed and docketed; and if the same is duly prosecuted, and is not collusive, one who purchases pending the suit is affected by the decree rendered therein." Civil Code, § 4533. It was held in this very case (*Marshall* v. *Whatley,* 136 *Ga.* 805 (72 S. E. 244, 36 L. R. A. 553)), that the decree rendered in the case of Marshall *v.* Carmichael was binding upon Barrett and Whatley, though the suit in which it was rendered was in a county other than the one in which the land is located. If the conversation between Marshall and Moore, about which the latter offered to testify, had occurred subsequently to the commencement of the suit by Marshall against Carmichael for specific performance, then

an entirely different question would be presented. The conversation, however, as already stated, occurred in 1901; and even assuming that it was had towards the last of that year, it was still several months prior to the institution of the action for specific performance. There is therefore nothing to indicate—granting, as we must, that Marshall had such conversation with Moore—that it was so nearly connected in time with the institution of the suit for specific performance, or with the purchase by Barrett of the land, which was more than five months after the bringing of the suit, that Marshall was guilty of any fraud in making the statement sought to be imputed to him by Moore. If Marshall made such statements, how long would they continue in force so as to be set up by way of estoppel against him? Certainly they would not so continue indefinitely and estop him for all time from asserting his right to the land as against any one who might subsequently purchase it upon Moore's information as to the statements claimed to have been made to him, at the time stated, by Marshall. As already indicated, neither Barrett nor Whatley acted, prior to the filing of the suit for specific performance, upon what Moore offered to testify that Marshall told him. The institution of that suit was a general notice to Barrett and Whatley of Marshall's claim to the land from the time the petition therein was filed and docketed; and they were bound by the decree rendered therein. Civil Code, § 4533. So whether Barrett was informed, either prior to the filing and docketing of that suit or subsequently thereto, as to what Marshall had stated to Moore, the law by virtue of the commencement of the suit for specific performance notified him of all of Marshall's claims in and to the land in controversy, and that he was insisting on and asserting the same. The proffered testimony therefore was not competent to protect Barrett and Whatley, who claimed under him, against the title of Marshall, to the land.

3. Another contention of counsel for plaintiff in error was, that as it appeared that Presley purchased the land from Carmichael, gave his notes for the purchase-price, and received a bond for title from Carmichael, before the suit by Marshall against Carmichael for specific performance was instituted, and after Presley had been informed by Marshall that he could not pay for the land and that he had given it up and had moved away from

it, and that by agreement entered into by Presley, Barrett, and Carmichael, Barrett took Presley's trade for the land, and that Carmichael returned to Presley the notes for the purchase-price and Presley delivered up to Carmichael his bond for title, and Presley paid to Carmichael $10 and received from him a conveyance for eight acres of the land, and Barrett gave to Carmichael his notes for the purchase-money, aggregating $10 less than the amount of Presley's notes to Carmichael, and that the latter delivered to Barrett a bond for title upon the payment of the new notes for the purchase-price,—this arrangement, though made subsequently to the commencement of the suit by Marshall against Carmichael for specific performance, did not bring Barrett within the doctrine of lis pendens, but that such transaction was no more a sale from Carmichael to Barrett than if Presley had transferred his bond for title to Barrett, and he had assumed the payment of Presley's notes to Carmichael. We can not agree to the soundness of this contention. It is true that if a person has acquired a prior right to the specific land, the commencement of a subsequent suit affecting the same land will not involve any act which he may afterwards do in pursuance of such antecedent right, or for the purpose of carrying it into effect. 2 Pomeroy's Equity Jurisprudence, § 637. So, it has been held, where a bond for title is given before suit, a conveyance thereafter is not subject to lis pendens. Parks v. Smoot's administrator, 105 Ky. 63 (48 S. W. 146); Wille v. Ellis, 22 Tex. Civ. App. 462 (54 S. W. 922); and see Jackson v. Dickenson, 15 Johns. 309 (8 Am. D. 236). The facts of the transaction as entered into by Presley, Barrett, and Carmichael, as above stated, do not characterize it as an act done in pursuance of a right antecedent to the beginning of the suit for specific performance, or one the purpose of which was to carry such right into effect. The theory of lis pendens is that there must be no novation so as to prejudice the rights of the parties to the suit. The transaction entered into by Presley, Barrett, and Carmichael was a novation. *Keller v. Beaty,* 80 *Ga.* 815 (6 S. E. 598); *Dillard v. Dillard,* 118 *Ga.* 97 (44 S. E. 885); Civil Code, § 4226. The contract between Barrett and Carmichael was a substitution for the contract between Carmichael and Presley, which was thereby extinguished; and as the new contract between Barrett and Carmichael as to the land was made about five months subsequently

to the bringing of the suit by Marshall against Carmichael for specific performance, it fell within the rule of lis pendens, so that Barrett and Whatley, to whom Barrett transferred his bond for title from Carmichael, were bound by the decree rendered in the suit for specific performance.

4.   Another contention made for plaintiff in error is that Whatley was induced to purchase the land from Barrett by certain representations made to Whatley by Marshall.   This contention was based on the testimony of T. C. Whatley, brother of the defendant, that he made the trade for the land with Barrett, although Barrett transferred to H. T. Whatley the bond for title from Carmichael.   The testimony of T. C. Whatley on the point now under consideration was as follows:  "I know Mr. Marshall.   He was engaged in sawmilling at that time [when witness made the trade for the land with Barrett].   H. T. Whatley and myself were engaged together at that time in sawmilling and farming.   I had a conversation with Mr. Marshall about this land before I purchased it.   I talked with him two years after he moved from there about this land, and he said he never paid for it, and he did not know whether he would ever be able to pay for it.   He told me that several times.   I remember this time particular.   He said he bought the land mainly for the timber, and said he had used that, and was going down the country; that he had never paid for it and did not know that he ever would."   There is no evidence whatever indicating that Marshall (granting, as we must, that he made such statement to the witness) had any notice or intimation from Whatley that the latter had any intention of purchasing the land for which Marshall was then suing Carmichael.   So far as the evidence shows to the contrary, it was a mere casual conversation between two sawmill men, in which Marshall said that he bought the land mainly for the timber, that he had used it and was going down the country, that he had not paid for the land and did not know that he ever would.   This language can not be construed as a declaration on the part of Marshall that he had abandoned his claim to the land, and did not authorize Whatley to so conclude.   Moreover, Whatley did not testify that he was induced by what Marshall said to him to purchase the land from Barrett.   Nor did he testify that he was in any way influenced by what Marshall said to him to make the purchase.

5. The court should not have admitted the testimony of Jordan as to the conversation he heard between Carmichael and Marshall, prior to the filing of the suit for specific performance, tending to show that Marshall had paid Carmichael for the land. Such evidence was immaterial, as the decree in the suit for specific performance was a conclusive adjudication of that matter. It is clear, however, that the admission of such irrelevant evidence, in view of the decree, is not cause for a new trial.

6. The direction of the verdict in behalf of Marshall against Whatley for the recovery of the land was proper, and therefore the court did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur.*