## McMillan v. Benfield et al.

Hines, J.  1. Where B. and M. agree upon a parol exchange of lands, under which B. is to give to M. a tract of 160 acres, and M. is to give to B. an equal number of acres to be carved out of a larger tract, the same to be selected by B.; and where, before this oral agreement is performed in whole or in part by the parties, B. and others on the same day and occasion and immediately after the making of such oral agreement for the exchange of their lands, and before the oral agreement of exchange is performed by either, purchase from M. the larger tract, paying part of the purchase-money, giving their notes for the balance of the purchase-money, and taking from M. his bond for title, under which he is to convey to B. and his associates such larger tract upon the payment of their said notes for its purchase-money, the contract of sale amounts to a novation of the contract of exchange, and the latter contract is at end.  Civil Code (1910), §§ 3543, 3682, 4226; Whatley v. Marshall, 139 Ga. 148 (76 S. E. 1025).

2. The subsequent written cancellation of the written contract of purchase, by the mutual consent of the parties thereto, did not have the effect of reviving the oral agreement between B. and M. for the exchange of their lands; and under such circumstances B. would not be entitled to specific performance of such oral agreement of exchange, or damages for its breach, in case M. was unable to convey to B. the land which he was to get under such agreement.

3. Under the allegations of the petition as amended, the plaintiffs do not make a case for the cancellation of the contract of purchase by B. and his associates from M., on the grounds (1) of fraud, (2) of minority of one of the purchasers who disaffirmed the contract on arriving at his majority, (3) of mistake of law, or (4) of the inability of M. to comply with his part of the contract.

4. Usually rescission is in toto, leaving the rights of the parties to be determined by a court of equity, and not by the abrogated contract. If on rescission the vendor keeps his land, he must account to the vendee for purchase-money paid in part performance of the contract by the vendee.  On such rescission the vendee is to be charged with any damages occasioned by his breach of the contract, and a fair rental value of the land under the agreement. Lytle v. Scottish American Mortgage Co., 122 Ga. 458 (50 S. E. 402) ; Couch v. Crane, 142 Ga. 22 (82 S. E. 459).  Where under such contract M. had received from B. a tract of land in part payment of the purchase-money of M.'s land, which tract so received by him he had sold, upon the rescission of the contract M. should account to B. for the price at which M. was to take the same or its fair market value at that time.

(a) The written contract of cancellation merely rescinds the contract of purchase, and does not provide that M. is entitled to keep the land of B.  This leaves the rights of the parties to be determined by a court of equity.

(b) Plaintiffs' petition alleges the facts hereinbefore stated, and in addition alleges that "plaintiffs stand ready to do equity in the premises and to account to M. for any and all rents that may be due him" on the Wilson tract, being the tract embraced in the written contract of

purchase aforesaid; and they pray that "should it be determined by the court and jury that plaintiffs are not entitled to specific performance at the hands of McMillan, or in lieu thereof damages, that then and in that event they be entitled to recover of the said McMillan the reasonable market value of the Morrison place," being the place which M. had received from B. in part payment for M.'s land. *Held*, that, properly construed, plaintiffs' petition prays for alternative relief; that is specific performance of the oral agreement for the exchange of their lands, or for damages in lieu thereof, or for the reasonable value of B.'s land which M. had received from B. in part payment of his lands; and that under these and other allegations of the petition, B. was entitled to recover the market value of his lands on the rescission of the contract of purchase. So holding, we think the petition set forth a cause of action for this purpose, and the trial judge did not err in overruling the general demurrer to the petition.

5. The court charged the jury as follows: "If you find for the plaintiff —that is, that Mr. Benfield is entitled to recover, you would find out how much the reasonable market value of that property was at the time of this trade or negotiations, and you would get that from the evidence; and if he is entitled to recover, he would be entitled to recover interest on it from the time it was taken possession ·of and used by Mr. McMillan; you would then compute that interest at seven per cent. down to date." This charge was assigned as error, because plaintiffs would not be entitled to any interest during the period ¯they occupied and enjoyed the lands purchased under the contract of purchase by B. and his associates from M. *Held*, that the plaintiffs would not be entitled to recover the value of the land which B. conveyed to M. in part payment of the purchase-money of the land of the latter, with interest thereon, but there should be deducted therefrom the rental value of the premises while they were occupied and enjoyed by B. and his copurchasers. While the charge was erroneous in this respect, its harmfulness can be cured by requiring the plaintiffs to write off the interest from the verdict; and if the plaintiffs will so do on or before the remittitur of this court is made the judgment of the court below, the judgment of the court below will be affirmed; otherwise it will be reversed.

6. Under the rulings announced in the foregoing headnotes, other assignments of error do not require the grant of a new trial.

   *Judgment affirmed on condition. All the Justices concur.*

No. 4531.   December 12, 1924.   Rehearing denied January 17, 1925.

Equitable petition. Before Judge J. B. Jones. Habersham superior court. August 11, 1924.

W. C. and·Luther Benfield filed their equitable petition against J. W. McMillan, D. O. Eller, and Carl, Robert, and Lawrence Benfield, in which they made these allegations: On May 28, 1920, W. C. Benfield and J. W. McMillan orally agreed to exchange lands, McMillan agreeing to give Benfield 160 acres of a 700-acre tract, composed of the Joe and Mart Wilson tracts, and Benfield agreeing to give McMillan a· place containing 160 acres, known as the Morri-

son place, to which Benfield held the title, but in which his son, Luther, had an equitable interest by reason of the payment of $150 on its purchase-price when his father bought it. The Morrison place was heavily timbered, and of the fair market value of $5000. After McMillan had sold to petitioners 160 acres of the Wilson tract, he bargained the balance thereof, about 540 acres, to D. O. Eller, a son-in-law of W. C. Benfield, and Carl, Lawrence, and Robert Benfield, sons of W. C. Benfield. This trade was consummated by McMillan giving to the purchasers a bond for title and by Eller deeding to McMillan a house and lot at a valuation of $500, as the first payment on the 540 acres of the Wilson tract, and by the purchasers executing their notes for the remainder of the purchase-money of said 540 acres. After McMillan had executed his bond for title to said purchasers at the time they executed their notes for the balance of the purchase-money, McMillan told W. C. Benfield that he would have to sign these notes, as his sons, Lawrence and Robert, were minors and their signatures would not be legal unless he as their father and guardian signed with them. Benfield told McMillan that he was not a party to that trade, that under the exchange he had paid for his 160 acres; but because of McMillan's insistence, and believing that he was signing only as guardian for his two minor sons, he finally agreed to sign the notes to complete their deal for the 540 acres left in said Wilson tract. On the day W. C. Benfield and McMillan entered into their agreement for the exchange of lands, the former informed McMillan that he was ready to make him a deed to the Morrison place for the 160 acres of the Wilson tract. Whereupon McMillan requested Benfield to give him all the old deeds to the Morrison place, so his attorney could prepare a deed without having to search the record. This Benfield did. McMillan promised that as soon as Benfield would come down to Clarkesville, he would make him a deed to the 160 acres of the Wilson tract, and also have prepared a deed to the Morrison place from Benfield to McMillan.

Under the oral agreement for the exchange of these lands, W. C. Benfield and Luther Benfield were to select the 160 acres of the Wilson tract which they were to get for the Morrison tract. Accordingly they fixed the boundaries of said tract, which they fully set out in their petition. In about a week W. C. Benfield went to Clarkesville and advised McMillan that he and his son had selected

the boundaries of the 160 acres of the Wilson tract, that he was ready to make McMillan a deed to the Morrison tract, and requested McMillan to make him a deed to the 160 acres of the Wilson tract. McMillan said he could not make him a deed that day, but that he would make a deed. Thereafter Benfield again approached McMillan and asked him to make a deed, but McMillan put him off with some excuse. For the third time Benfield requested Mc-Millan to make him a deed, but McMillan put him off by saying he could not make a deed that day but would do so. In the fall of 1920 McMillan entered upon the Morrison tract, and began to cut and saw the timber thereon. Petitioners made no effort to stop him, because of his continued promises to make a deed to Benfield. A few days prior to December 20, 1920, Eller and Carl, Robert, and Lawrence Benfield concluded that they would not be able to pay for the 540 acres of the Wilson tract purchased from McMillan. As a result of negotiations between them, they and McMillan agreed to cancel their trade for the purchase of the 540 acres of the Wilson tract, by McMillan giving up their notes and the purchasers surrendering their bond for title to said land. The agreement and cancellation is in writing and is as follows:

"Georgia—Habersham County. This agreement made and entered into this the 20th day of December, 1920, between J. W. McMillan of the one part, and W. C. Benfield, Carlton Benfield, Lawrence Benfield, and Robert Benfield, witnesseth: That whereas the said Benfields together with Dillard Eller traded for what is known as the Joe Wilson place in Batesville District in Habersham County, Ga., and Mart Wilson place in Batesville District Habersham Co., Ga., containing 700 acres, more or less, in May, 1920, from J. W. McMillan, and said McMillan executed a bond for title to said parties for this land, and they put into him, that is, W. C. Benfield put in 160 acres of land, and Dillard Eller put in a house and lot in Tallulah Falls, Ga., and said parties executed their notes to McMillan for the remainder of the purchase-price, said amount being between fifteen and sixteen thousand dollars: It is now agreed that said Benfields are to surrender to McMillan the bond for title which they hold for this land, and McMillan is to surrender to Benfields their notes which they gave him for the land; and this is to be an end of said land trade. When the above is completed, which will be within the next day or so, then the said

McMillan agrees to rent and does rent to W. C. Benfield and Luther Benfield the said two places whereon they now live for the year 1921 for one third of what is made on said places." Signed by all parties, December 20, 1920.

As W. C. Benfield had signed said notes as guardian for his minor sons, it was necessary for him to sign said agreement of rescission, which he did at the request of McMillan. Believing that McMillan was not going to carry out his parol agreement with him for said exchange of lands, W. C. Benfield agreed to rent all of the Wilson tract for the year 1921, and this agreement was inserted in said cancellation agreement. As soon as said cancellation contract was signed, W. C. Benfield demanded from McMillan all of his back deeds to the Morrison place; but McMillan informed him that he had already made to him a deed to said Morrison place, and that he expected to keep said tract of land, which was the first time Benfield had ever heard of his having made a deed to McMillan to the Morrison tract. He then informed McMillan that he had never made a deed at any time to said tract, and that, if he had a deed, it was a fraud upon him, as he was only to make a deed when McMillan made him and Luther a deed to the 160 acres of the Wilson tract.

On January 5, 1921, there was placed on record what purported to be a deed made by W. C. Benfield to McMillan on May 28, 1920, conveying the Morrison place to McMillan. At the time W. C. Benfield rented the Wilson tract for the year 1921 he had no recollection of ever having made said McMillan said deed; and he "now says that it was not his act and deed, and had he known at the time of making the rental contract for the Wilson place for the year 1921 that . . McMillan was claiming to hold a deed and title to said land, he would not have entered into such an agreement." At the time they made said agreement to exchange their lands McMillan knew that Luther Benfield had an equitable interest in said Morrison place. W. C. Benfield is 51 years of age, his health is bad, he is illiterate, scarcely able to read and write, and for several years prior to said parol contract with McMillan he was in bad health and had suffered the entire loss of memory and understanding at times, due to a chronic case of epilepsy. His head is affected by reason thereof, and he can not understand and reason out things. Said Morrison place represents the savings of

a lifetime of toil and hard work. "Petitioners charge and aver that W. C. Benfield never made said deed so far as his (W. C. Benfield's) recollection goes; . . and if said deed purports to be signed by W. C. Benfield, it is a fraud and was obtained by fraud and artful practices by said . . J. W. McMillan." McMillan, by entering upon the Morrison tract and by cutting and removing the timber thereon of the value of $3000, has irreparably damaged said land and petitioners, and he is not now in a position to restore them to their former position with respect thereto. By reason of this fact said McMillan should in equity be compelled to specifically perform his part of said parol contract by making petitioners a deed to the 160 acres of the Wilson tract, and by petitioners making him a deed to the Morrison place, which they are willing to do. Believing in good faith that McMillan would make no further claim to the Morrison tract, W. C. Benfield rented said Wilson tract for the year 1921; but inasmuch as McMillan is undertaking to claim title to the Morrison tract, petitioners ask that said agreement in regard to renting so much of the Wilson tract as is embraced in the boundaries selected by them in exchange for the Morrison tract be reformed by decree of this court so as not to prejudice their rights. Should there be anything in the bond for title which conflicts with said parol agreement, which was a separate and distinct agreement, petitioners pray that said bond for title be so reformed by decree of court as not to prejudice their rights. They attach to their petition a copy of the deed purporting to be executed by W. C. Benfield to McMillan to the Morrison place. They pray that McMillan be required to specifically perform said parol agreement; that the title to the 160 acres of the Wilson tract be decreed to be in them; that the agreement made by McMillan with Eller, Carl, Lawrence, and Robert Benfield, which W. C. Benfield signed as guardian for his two minor sons, be so reformed by decree of the court as not to prejudice the rights of petitioners under said parol agreement; that the bond for title, if it embraced the 160 acres of the Wilson tract claimed by petitioners, be reformed so as not to prejudice their rights; that the purported deed from W. C. Benfield to McMillan to the Morrison tract be declared void and canceled; and that they have such other and further relief as they may be entitled to in the premises.

To this petition McMillan demurred on the grounds (1) that it

set forth no cause of action, and (2) that plaintiffs are not entitled to any of the relief prayed. Petitioners then amended their petition and made these allegations: They were not parties to the agreement by which Eller, Carl, Lawrence, and Robert Benfield purchased the 540 acres of the Wilson land after they had carved out the 160 acres they were to get for their Morrison place. W. C. Benfield was fraudulently induced to sign said notes under the belief and mistake of law that he was the guardian of his two minor sons. Owing to his illiteracy and infirmity he relied upon the statements of McMillan and his agents, and believed he was signing said notes as guardian and not in his individual capacity. Lawrence Benfield has become of age and has filed his answer in this case, disaffirming said sale and any and all agreements relating to the sale of the Wilson tract to him and his copurchasers, on the ground that they were void on account of his infancy. At the time of the execution of the bond for title by McMillan to said purchasers, he knew that Lawrence and Robert Benfield were minors. If, as contended by McMillan in his answer, W. C. Benfield did make and execute said promissory notes and cancellation agreement in his own behalf, in view of the plea of infancy filed by said Lawrence Benfield, disaffirming said purchase on account of his infancy, said contracts and agreements do not bind the plaintiffs. The whole contract of purchase, as claimed by McMillan, is a joint and entire one, which necessarily falls in view of the plea of infancy and disaffirmance by Lawrence Benfield. Under their parol agreement petitioners were not to execute to McMillan a deed to the Morrison place until he had executed to them a deed for 160 acres of the Wilson tract. Notwithstanding this agreement, McMillan, by some artful practice and undue advantage, coupled with the illiteracy and diseased mind of W. C. Benfield, did fraudulently, and in some manner unknown to petitioners, obtain from W. C. Benfield a deed to the Morrison tract, which they did not know of until after the execution of said cancellation agreement. For some time prior to the sales in question they had rented the Wilson tract from McMillan, in whom they had great confidence until they found out that he was not going to carry out his agreement for the exchange of said lands, but at that time they did not know that he claimed to hold the deed to the Morrison place. When McMillan came to exchange lands with petitioners on May 28, 1920, he represented

to them that he owned the Mart and Joe Wilson lands, having purchased the same from J. A. Roberson at the price of $9500, which statement was believed to be true. Some time thereafter they found out that McMillan did not own said lands, but only held a bond for title to the same, expressing a consideration of $9500, of which sum only $500 had been paid by McMillan, which only gave him a small equity in said lands. Up to the time of filing their petition and this amendment McMillan has paid on said land only the sum of $1220. Considerable interest has accrued which is unpaid. McMillan does not own said lands, nor has he ever been in position to carry out his part of said parol agreement, nor his agreement set out in his bond for title to Eller and others. McMillan is not now in position to do so, and he fails and refuses to carry out said contract. McMillan has sold their land to an innocent purchaser for value without notice, and fails to account to plaintiffs in land or money for said 160 acres. In consequence plaintiffs have been damaged in the sum of $5000 by McMillan, on which they are entitled to interest from June 1, 1920. Plaintiffs stand ready to do equity in the premises, and to account to McMillan for any rents they may be due him on the Wilson tract. While the purported deed from W. C. Benfield to McMillan is not his act and deed, McMillan has received all the benefits and fruits from said land. Plaintiffs stand ready to execute a good and sufficient deed to him upon his reimbursing them in a sufficient amount. They ask that the cancellation agreement and rental contract therein be by decree of court canceled instead of reformed, on the grounds that the same is void by reason of the disaffirmance by one of the parties thereto, on account of his infancy; and that it was obtained through fraud, artful practices, and undue advantage taken by McMillan of W. C. Benfield, who, on account of his ignorance of his rights, executed the same. They further pray that the bond for title be canceled, because the same is void, due to the fact that it was an undertaking by an infant who has pleaded such infancy as a defense, and that the same should be canceled because obtained by fraud. Owing to the fact that McMillan is not in position to specifically perform his part of said agreement and has refused to go on with said parol agreement, and is not in position to restore plaintiffs to their original position, they pray for damages in the sum of $5000, with interest, in lieu

of specific performance. Should it be determined by the court and jury that plaintiffs are not entitled to specific performance at the hands of McMillan, or in lieu thereof damages, then and in that event they ask to recover from McMillan the reasonable market value of the Morrison place, sold by McMillan to innocent purchasers without notice, and which is beyond his power to restore to plaintiffs. Plaintiffs disclaim any right to any money judgment against any of the defendants except McMillan. On May 28, 1920, when said contract was negotiated, it was agreed between McMillan and plaintiffs that each party was to go into possession of their respective tracts. Accordingly McMillan went into possession of the Morrison tract, and plaintiffs selected and went into immediate possession of the 160 acres of the Wilson tract.

To this amendment McMillan objected on the grounds (1) that it set up a new and distinct cause of action, (2) that the petition as amended was multifarious, (3) that it undertakes to set up and plead the minority of two of the defendants, which, if true, could only be taken advantage of by them, and (4) that said amendment and petition undertake to set up several different distinct causes of action. The court overruled said objections, and allowed said amendment; and overruled the demurrer to the petition as amended. To these rulings McMillan excepted pendente lite, and assigned error thereon. The case was tried before a jury, which rendered a verdict in favor of the plaintiffs for $3200 principal, $719.98 interest, and costs of suit. The defendant moved for a new trial on various grounds. The court below overruled his motion, and error was assigned on this judgment.

*Egbert Beall, McMillan & Erwin,* and *I. H. Sutton,* for plaintiff in error.

*J. C. & H. E. Edwards,* contra.